1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

## EASTERN DISTRICT OF CALIFORNIA

9

10   RAYMOND H. DENTON,

11                    Plaintiff,

12        v.

13   FISHER, *et al.*,

14                    Defendants.

15

16

17

|  |  |
|---|---|
| Case No. 1:23-cv-00313-BAM (PC) | |
| ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION | |
| FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM | |
| (ECF No. 9) | |
| **FOURTEEN (14) DAY DEADLINE** | |

18        Plaintiff Raymond H. Denton ("Plaintiff") is a state prisoner proceeding *pro se* and *in*

19   *forma pauperis* in this civil rights action under 42 U.S.C. § 1983. Plaintiff's first amended

20   complaint is currently before the Court for screening. (ECF No. 9.)

21   **I.        Screening Requirement and Standard**

22        The Court is required to screen complaints brought by prisoners seeking relief against a

23   governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C.

24   § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

25   or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

26   relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

27        A complaint must contain "a short and plain statement of the claim showing that the

28   pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not

1  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

2  conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

3  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

4  true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*,

5  572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

6     To survive screening, Plaintiff's claims must be facially plausible, which requires

7  sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

8  for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

9  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully

10  is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

11  standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

12  **II.     Plaintiff's Allegations**

13     Plaintiff is currently housed at Valley State Prison ("VSP") in Chowchilla, California,

14  where the events in the complaint are alleged to have occurred.  Plaintiff names the following

15  defendants: (1) R. Fisher, Warden; (2) S. Torres, Associate Warden of Housing, Chief

16  Disciplinary Officer and Coordinator for the Men's Advisory Council; (3) R. Boozer, Facility

17  Captain; (4) K. Welch, Correctional Lieutenant; and (5) M. Santoya, Correctional Sergeant.  All

18  defendants are sued in their individual and official capacities.

19     Plaintiff alleges as follows:

20     The Men's Advisory Council ("MAC") is created under the provisions of the California

21  Code of Regulations, Title 15 § 3230.  The council serves to provide the inmate population with

22  representation and a voice in administrative deliberations and decisions affecting the welfare and

23  best interests of all inmates.  Title 15 § 3230(b) states: "Eligibility for nomination, election, and

24  retention as a member of the MAC "SHALL" be limited only by the inmate's ability to function

25  in that capacity as DETERMINED BY THE WARDEN."  (Exhibit 1, MAC

26  Constitution/Bylaws.)

27     On October 30, 2020, non-defendant Captain Torres had a meeting with the MAC.  At

28  that time, COVID restrictions were being relaxed by the administration and the exercise yard was

2

1   open.  At the meeting, MAC Secretary Rodrigues asked Captain Torres if it would be feasible to

2   leave the yard open for the unaffected and remaining buildings during COVID testing on the

3   facility.  Captain Torres replied that she would look into the request.  (Exhibit 2, MAC Minutes

4   Torres.)

5          On February 24, 2021, Plaintiff was re-elected as Housing Unit rep. for the MAC after

6   being unlawfully removed as MAC Chairman.  (Exhibit 3, MAC Election Notice.)

7          On March 22, 2021, Plaintiff had a conversation with Defendants Associate Warden

8   Torres and Sergeant Santoya in front of the Facility B1 Housing Unit as they were preparing to

9   enter the building.  At that time, Plaintiff asked Defendant Torres why the Facility Yard was

10   continuously being closed down for COVID testing and Plaintiff informed Defendant Torres that

11   he planned to file an "inmate appeal" regarding the matter.  At that time, Defendant Torres

12   responded: "IF YOU DON'T STOP CAUSING TROUBLE I'M GOING TO WRITE YOU UP

13   AND REMOVE YOU FROM THE MAC."  Defendant Santoya then interjected and stated:

14   "YEAH AND WE ARE GOING TO TRANSFER YOU OUT OF HERE FOR WRITING UP

15   C/O BASLOR."  Plaintiff notes that Defendants Torres and Santoya investigated and granted an

16   appeal Plaintiff had filed against C/O Baslor.  (Exhibit 4, Appeal Granted Against C/O Baslor.)

17          When Plaintiff arrived in the housing unit he obtained a new mask because the strap on

18   his current mask had broken.  Approximately two minutes later, C/O Logan asked Plaintiff to pull

19   up his mask over his nose during a conversation, and Plaintiff immediately complied with his

20   request.

21          On March 23, 2021, Plaintiff received a CDCR-115 disciplinary report from Defendant

22   Santoya for Disobeying an Order pursuant to Title 15 § 3005(B).  The disciplinary report was

23   unlawfully classified as "serious" by Defendant Captain Boozer in violation of Title 15 § 3313(a)

24   and the serious classification made Plaintiff eligible to be removed from the Council, which was

25   the main objective.  Section 11.6 of the MAC Constitution and by/laws requires an adjudication

26   of a serious CDCR-115 before the Warden can remove a MAC member.  Plaintiff notes that

27   nowhere in the disciplinary report does Defendant Santoya allege that he gave Plaintiff an order

28   to do anything, nor does he mention that Plaintiff complied with C/O Logan's request to pull the

3

1    mask up.  (Exhibit 5, Disciplinary Report Santoya.)

2           On April 19, Plaintiff was summonsed to a disciplinary hearing that was conducted by

3    Senior Hearing Officer Defendant Welch.  At that time, Defendant Welch refused to call any of

4    the housing unit officers who were present on the day in question.  He also refused to review the

5    housing unit audio video camera system which would have exonerated Plaintiff and impeached

6    Defendant Santoya's account of the day in question.  Plaintiff tried to explain to Defendant Welch

7    that the disciplinary report was issued in retaliation for his use of the inmate appeals process and

8    that the disciplinary report was wrongfully classified as "serious" in violation of Title 15

9    § 3313(a) and the rules of progressive discipline pursuant to Title 15 § 3312.  After Plaintiff

10   conveyed these facts, Defendant Welch stated: "I DON'T HAVE TO REDUCE ANYTHING

11   BECAUSE YOU LIKE TO WRITE US UP AND SUE US ANYWAY."  Defendant Torres

12   approved the findings on May 11, 2021.  (Exhibit 6, Disciplinary Hearing Results.)

13          On April 26, 2021, Plaintiff contacted Defendant Torres and explained that the

14   disciplinary report was wrongfully classified and retaliatory.  Defendant Torres failed to correct

15   the violation and advised Plaintiff of his right to appeal.  (Exhibit 7, Letter to Torres.)

16          On May 14, 2021, Defendant Warden Fisher disseminated a memorandum which

17   mandates that all staff at VSP utilize progressive discipline when dealing with facial covering

18   violations.  This memo is consistent with Title 15 §§ 3312(a)(1)–(3) which governs the rules of

19   progressive discipline.  (Exhibit 8, Warden Fisher's Memo.)

20          On June 23, 2021, Plaintiff contacted Defendant Fisher regarding the retaliation and the

21   falsely classified disciplinary report.  This was the third time Plaintiff contacted Defendant Fisher

22   about retaliation and the use of falsely classified disciplinary reports to remove MAC members.

23   Plaintiff was terminated again.

24          On January 18, 2018, Plaintiff had contacted Defendant Fisher regarding retaliation and

25   falsely classified disciplinary reports.  On October 21, 2019, Plaintiff conveyed his concerns at a

26   MAC meeting to Defendant Fisher about CDCR-115 disciplinary reports being classified as

27   serious when the offense does not meet the criteria as outlined in the rules of progressive

28   discipline.  After being placed on notice Defendant Fisher failed and/or refused to address and

1   correct the retaliatory actions of his staff.

2          On October 6, 2021, Plaintiff exhausted the appeals to the third level.  (Exhibit 9, Letter to

3   Fisher, MAC Minutes, Exhausted Appeal, Fisher's Letter.)

4          As relief, Plaintiff seeks a declaratory judgment, expungement of the disciplinary report

5   from Plaintiff's C-file, and compensatory and punitive damages.

6   **III.    Discussion**

7          Plaintiff's first amended complaint fails to state a cognizable claim for relief and is barred

8   by *Heck v. Humphrey*.  Despite being provided with the relevant pleading and legal standards,

9   Plaintiff has been unable to cure the identified deficiencies.

10         **A.    Supervisory Liability**

11         To the extent Plaintiff seeks to hold any defendant liable based solely upon their

12  supervisory role, he may not do so.  Liability may not be imposed on supervisory personnel for

13  the actions or omissions of their subordinates under the theory of respondeat superior.  *Iqbal*, 556

14  U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v.

15  City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th

16  Cir. 2002).  "A supervisor may be liable only if (1) he or she is personally involved in the

17  constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's

18  wrongful conduct and the constitutional violation."  *Crowley v. Bannister*, 734 F.3d 967, 977 (9th

19  Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. &

20  Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16

21  (9th Cir. 2012) (en banc).  "Under the latter theory, supervisory liability exists even without overt

22  personal participation in the offensive act if supervisory officials implement a policy so deficient

23  that the policy itself is a repudiation of constitutional rights and is the moving force of a

24  constitutional violation."  *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646

25  (9th Cir. 1989)) (internal quotation marks omitted).  Plaintiff has failed to allege direct

26  participation in the alleged violations by Defendant Warden Fisher.  He does not make a

27  sufficient showing of any personal participation, direction, or knowledge on this defendant's part

28  regarding any other prison officials' actions.  Plaintiff has not alleged factual support that this

1    defendant personally participated in the alleged deprivations.

2              Plaintiff also alleges that he contacted Defendant Fisher at least three times regarding the

3    unlawful use of the disciplinary and classification process to retaliate and terminate duly elected

4    members of the MAC, and that there was a regular and systematic failure to provide training and

5    supervision regarding the practice.  A "failure to train" theory can be the basis for a supervisor's

6    liability under § 1983 in only limited circumstances, such as where the failure amounts to

7    deliberate indifference.  *See City of Canton v. Harris*, 489 U.S. 378, 387–90 (1989).  To establish

8    a failure to train claim, a plaintiff must show that " 'in light of the duties assigned to specific

9    officers or employees, the need for more or different training [was] obvious, and the inadequacy

10   so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably

11   be said to have been deliberately indifferent to the need.' "  *Clement v. Gomez*, 298 F.3d 898, 905

12   (9th Cir. 2002) (quoting *Canton*, 489 U.S. at 390).

13             However, Plaintiff has not alleged facts demonstrating that Defendant Fisher was

14   deliberately indifferent to a need for more or different training.  Defendant Fisher responded to

15   Plaintiff's concerns by explaining in a letter why Plaintiff's disciplinary report was correctly

16   classified, (ECF No. 9, pp. 50–51), and explaining during a meeting with the MAC that

17   disciplinary reports are classified on a case-by-case basis by each Facility's Captain, (*id.* at 55).[1]

18   Associate Warden Chavez, who is not named as a defendant, also explained during the same

19   meeting that he reviews all disciplinary reports after the hearing to ensure the reports are

20   classified correctly.  (*Id.*)

21   ///

22   _____

[1] Due to highlighting and photocopying, the relevant portion of Exhibit 9 is difficult to decipher, but appears to state:

23
24       **ITEM 2:** The Council has received complaint that CDCR disciplinary reports are being classified
         as serious when the offense does not meet the criteria of Title 15 Section 3315.

25       ***Response*:** Warden Fisher stated that it is the responsibility of the Captains on each facility to
         classify disciplinary reports.  AW Chavez stated that he reviews all disciplinary reports after the
26       hearing to ensure that the report has been classified correctly.  Warden Fisher added that
         disciplinary reports all have different criteria therefore they are classified on a case-by-case basis
27       taking into consideration the inmate's history [illegible.]  Warden Chavez advised he had not
         previously heard of this issue.

28   (ECF No. 9, p. 55.)

In addition, Plaintiff has failed to "demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy."  Because supervisory defendants may not generally be held liable under a respondeat superior theory, Plaintiff will be provided an opportunity to amend to allege facts showing the supervisor defendants participated in a constitutional violation through their own conduct or established an unconstitutional policy. *See Willard v. Cal. Dep't of Corr. & Rehab.*, No. 14-0760, 2014 WL 6901849, at \*4 (E.D. Cal. Dec. 5, 2014) ("To premise a supervisor's alleged liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and establish a 'direct causal link' between that policy and the alleged constitutional deprivation.").

### B.      Eleventh Amendment Immunity

Plaintiff is attempting to sue defendants for monetary damages in their official and individual capacities.  "Suits against state officials in their official capacity . . . should be treated as suits against the State."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California).  An official capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted).  Such a suit "is not a suit against the official personally, for the real party in interest is the entity."  *Id.* at 166 (emphasis in original).

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override. . . ."  *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999).  "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies."  *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert.

denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court. . . ." *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

Therefore, Plaintiff's claims for monetary damages against the named defendants in their official capacities are barred by the Eleventh Amendment.

### C.     First Amendment – Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere threat of harm can be an adverse action." *Watison*, 668 F.3d at 1114 (internal citations omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. *Id.* The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. *Rhodes*, 408 F.3d at 567–68. The plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." *Watison*, 668 F.3d at 1114. A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were

1  "unnecessary to the maintenance of order in the institution."  *Id.*

2         Though it appears Plaintiff could state a cognizable claim for retaliation, based on

3  allegations that Defendants Torres and Santoya threatened to write him up and remove him from

4  the MAC, and thereafter Plaintiff received a disciplinary report that resulted in the loss of good

5  time credits and day room privileges, this claim is barred by *Heck v. Humphrey*, as discussed

6  below.

7  **D.    False Accusation or Misclassification of Disciplinary Report**

8         Plaintiff alleges that he received a disciplinary report for Disobeying an Order, and it was

9  incorrectly classified as "serious."  Although not entirely clear, it appears Plaintiff is alleging that

10  his rights were violated due to the misclassification of the report, or that he was falsely accused of

11  more serious conduct than was alleged in the report.

12        The creation of false evidence, standing alone, is not actionable under § 1983. *See*

13  *Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison

14  record has not been recognized); *Johnson v. Felker*, No. 1:12–cv–02719 GEB KJN (PC), 2013

15  WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right

16  to be free from false accusations of misconduct, so the mere falsification of a report does not give

17  rise to a claim under section 1983.") (citations omitted). Moreover, "plaintiff cannot state a

18  cognizable Eighth Amendment violation based on an allegation that defendant[ ] issued a false

19  rule violation against plaintiff." *Jones v. Prater*, No. 2:10-cv-01381 JAM KJN P, 2012 WL

20  1979225, at *2 (E.D. Cal. Jun. 1, 2012); *see also Youngs v. Barretto,* No. 2:16-cv-0276 JAM AC

21  P, 2018 WL 2198707, at *3 (E.D. Cal. May 14, 2019) (noting that issuance of false rules violation

22  report does not rise to the level of cruel and unusual punishment) (citations omitted).

23  **E.    Fourteenth Amendment – Procedural Due Process**

24        The Due Process Clause protects prisoners from being deprived of liberty without due

25  process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  In order to state a cause of action

26  for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty

27  interest for which the protection is sought.  Liberty interests may arise from the Due Process

28  Clause itself or from state law.  *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

9

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Wolff*, 418 U.S. at 563-71.  In addition "[s]ome evidence" must support the decision of the hearing officer. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached . . . ." *Id.* at 455–56 (emphasis added).

Plaintiff alleges that his due process rights were violated because Defendant Welch, the Senior Hearing Officer, refused to call any housing unit officers to testify as witnesses, or to review the housing unit audio video system during the disciplinary hearing.  Plaintiff does not have a due process right to present audio or video recordings during a disciplinary hearing, and due process does not require that Plaintiff's witnesses physically appear at a RVR hearing if the witness's statement is presented or calling the witness would be unduly hazardous to institutional safety or correctional goals.  However, this claim is barred by *Heck v. Humphrey*, as discussed below.

### F.    *Heck v. Humphrey*

It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a section 1983 action and their sole remedy lies in habeas corpus relief. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005).  Often referred to as the favorable termination rule or the *Heck* bar, this exception to section 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement-either directly through an

1   injunction compelling speedier release or indirectly through a judicial determination that

2   necessarily implies the unlawfulness of the State's custody." *Wilkinson*, 544 U.S. at 81; *Heck v.*

3   *Humphrey*, 512 U.S. 477, 482, 486–87 (1994); *Edwards v. Balisok*, 520 U.S. 641, 644 (1997).

4   Thus, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)—no matter the

5   relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state

6   conduct leading to conviction or internal prison proceedings)—if success in that action would

7   necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81–82.

8          The exhibits to the first amended complaint indicate that Plaintiff was found guilty of the

9   disciplinary report for disobeying an order, and subsequently lost 30 days of credits and 30 days

10   of day room privileges.  (ECF No. 9, pp. 40–41.)  In addition, in the original complaint Plaintiff

11   alleged that a writ of habeas corpus was denied in Madera County Superior Court,[2] and the first

12   amended complaint again seeks expungement of the disciplinary report from Plaintiff's C-file.

13   Despite being provided with the opportunity to do so, Plaintiff has not alleged that the

14   disciplinary action has been "reversed on direct appeal, expunged by executive order, declared

15   invalid by a state tribunal authorized to make such determination, or called into question by a

16   federal court's issuance of a writ of habeas corpus."  *See e.g.*, *Cox v. Clark*, 321 Fed. Appx. 673,

17   676 (9th Cir. 2009) (affirming dismissal of due process claim pursuant to *Balisok* to the extent

18   that plaintiff sought restoration of good-time credits and the reversal of a disciplinary decision);

19   *McCoy v. Spidle*, 2009 WL 1287872, *7–*8 (E.D. Cal. May 6, 2009) ("A challenge under section

20   1983, seeking only damages and declaratory relief for procedural due process violations is also

21   barred if the nature of the challenge would necessarily imply the invalidity of the deprivation of

22   good-time credits.").

23          Thus, it appears Plaintiff's retaliation and due process claims are barred by *Heck*, as a

24   judgment in favor of Plaintiff on his claims would necessarily imply the invalidity of the

25

26   _____

    [2] While an amended complaint supersedes the original complaint, *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th
    Cir. 2012), Plaintiff also may not omit relevant facts in an attempt to state a cognizable claim.  *See Azadpour v. Sun*
27   *Microsys., Inc.*, No. 06–3272, 2007 WL 2141079, at *2 n. 2 (N.D. Cal. July 23, 2007) ("Where allegations in an
    amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as
28   true, and may, in fact, strike the changed allegations as 'false and sham.'") (citations omitted).  The Court therefore
    takes judicial notice of the unsuccessful habeas action as alleged in the original complaint.  (ECF No. 1, p. 5.)

1   disciplinary action and the subsequent loss of credits.  *Edwards*, 520 U.S. at 646 (holding that §

2   1983 claim is not cognizable because allegations of procedural defects and a biased hearing

3   officer implied the invalidity of the underlying prison disciplinary sanction of loss of good-time

4   credits).

5          **G.**     **Prison Regulations**

6         Plaintiff alleges that Defendant Boozer unlawfully classified the disciplinary report as

7   "serious" and Defendants Welch, Torres, and Fisher refused to reduce the classification in

8   violation of Title 15 § 3313(a) and Defendant Fisher's memorandum regarding progressive

9   discipline.

10         To the extent that Plaintiff attempts to bring any claims solely based on a defendant's

11   violation of prison rules and policies, he may not do so, as alleged violations of prison rules and

12   policies do not give rise to a cause of action under § 1983.  Section 1983 provides a cause of

13   action for the deprivation of federally protected rights.  "To the extent that the violation of a state

14   law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by

15   the federal Constitution, [s]ection 1983 offers no redress."  *Sweaney v. Ada Cty., Idaho*, 119 F.3d

16   1385, 1391 (9th Cir. 1997) (quoting *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th

17   Cir. 1996)); *see Davis v. Kissinger*, No. CIV S–04–0878-GEB-DAD-P, 2009 WL 256574, *12 n.

18   4 (E.D. Cal. Feb. 3, 2009).  Nor is there any liability under § 1983 for violating prison policy.

19   *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d

20   427, 430 (8th Cir. 1997)).  Thus, the violation of any prison regulation, rule or policy does not

21   amount to a cognizable claim under federal law, nor does it amount to any independent cause of

22   action under section 1983.

23          **H.**     **Declaratory Relief**

24         To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary.  "A

25   declaratory judgment, like other forms of equitable relief, should be granted only as a matter of

26   judicial discretion, exercised in the public interest."  *Eccles v. Peoples Bank of Lakewood Village*,

27   333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful

28   purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and

1    afford relief from the uncertainty and controversy faced by the parties." *United States v.*

2    *Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).  If this action reaches trial and the jury returns

3    a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional

4    rights were violated.  Accordingly, a declaration that any defendant violated Plaintiff's rights is

5    unnecessary.

6    **IV.    Conclusion and Recommendation**

7          For the reasons discussed, the Court finds that Plaintiff's first amended complaint is

8    barred by *Heck v. Humphrey* and fails to state a cognizable claim for relief.  Despite being

9    provided with the relevant legal standards, Plaintiff has been unable to cure the deficiencies in his

10   complaint.  Further leave to amend is not warranted.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

11   Cir. 2000).

12          Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a

13   district judge to this action.

14          Furthermore, IT IS HEREBY RECOMMENDED that this action be dismissed as barred

15   by *Heck v. Humphrey* and for failure to state a cognizable claim upon which relief may be

16   granted.

17          These Findings and Recommendation will be submitted to the United States District Judge

18   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen**

19   **(14) days** after being served with these Findings and Recommendation, Plaintiff may file written

20   objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

21   Findings and Recommendation."  Plaintiff is advised that failure to file objections within the

22   specified time may result in the waiver of the "right to challenge the magistrate's factual

23   findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*

24   *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

25
26   IT IS SO ORDERED.

27      Dated:   **September 14, 2023**         /s/ *Barbara A. McAuliffe*

28                                              UNITED STATES MAGISTRATE JUDGE

                                               13