1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11  RAYMOND H. DENTON,

Case No.  1:23-cv-00313-KES-BAM (PC)

12              Plaintiff,

ORDER GRANTING PLAINTIFF'S
REQUEST FOR CASE STATUS

13        v.

(ECF No. 19)

14  FISHER, *et al.*,

FINDINGS AND RECOMMENDATIONS
TO DISMISS CERTAIN CLAIMS AND

15              Defendants.

DEFENDANTS
(ECF No. 17)

16

**FOURTEEN (14) DAY DEADLINE**

17

18        Plaintiff Raymond H. Denton ("Plaintiff") is a state prisoner proceeding *pro se* and *in*

19  *forma pauperis* in this civil rights action under 42 U.S.C. § 1983.

20        On July 18, 2025, Plaintiff filed a request for case status regarding the status of his second

21  amended complaint.  (ECF No. 19.)  The motion is granted by the instant findings and

22  recommendations.  Plaintiff's second amended complaint is currently before the Court for

23  screening.  (ECF No. 17.)

24  **I.      Screening Requirement and Standard**

25        The Court is required to screen complaints brought by prisoners seeking relief against a

26  governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

27  § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

28  or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

1

1    relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

2           A complaint must contain "a short and plain statement of the claim showing that the

3    pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

4    required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

5    conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

6    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

7    true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*,

8    572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

9           To survive screening, Plaintiff's claims must be facially plausible, which requires

10   sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

11   for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

12   *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully

13   is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

14   standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

15   **II.     Plaintiff's Allegations[1]**

16          Plaintiff is currently housed at Valley State Prison ("VSP") in Chowchilla, California,

17   where the events in the complaint are alleged to have occurred.  Plaintiff names the following

18   defendants: (1) R. Fisher, Warden; (2) S. Torres, Associate Warden of Housing and Chief

19   Disciplinary Officer and Coordinator for the Men's Advisory Council; (3) R. Boozer, Facility

20   Captain; (4) K. Welch, Correctional Lieutenant; and (5) M. Santoya, Correctional Sergeant.  All

21   defendants are sued in their individual and official capacities.

22          Plaintiff alleges as follows:

23          The Men's Advisory Council ("MAC") is created under the provisions of the California

24   Code of Regulations, Title 15 § 3230.  The council serves to provide the inmate population with

25   representation and a voice in administrative deliberations and decisions affecting the welfare and

26   best interests of all inmates.  Title 15 § 3230(b) states: "Eligibility for nomination, election, and

27

28   _____
     [1] The Court notes that the second amended complaint is identical to the first amended complaint, with the exception
     of the argument regarding the application of *Heck v. Humphrey* to this case.  (ECF No. 17, p. 7.)

retention as a member of the MAC "SHALL" be limited only by the inmate's ability to function in that capacity as DETERMINED BY THE WARDEN." (Exhibit 1, MAC Constitution/Bylaws.)

In October 2020, non-defendant Captain Torres had a meeting with the MAC. At that time, COVID restrictions were being relaxed by the administration and the exercise yard was open. At the meeting, MAC Secretary Rodrigues asked Captain Torres if it would be feasible to leave the yard open for the unaffected and remaining buildings during COVID testing on the facility. Captain Torres replied that she would look into the request. (Exhibit 2, MAC Minutes Torres.)

On February 24, 2021, Plaintiff was re-elected as Housing Unit rep. for the MAC after being unlawfully removed as MAC Chairman. (Exhibit 3, MAC Election Notice.)

On March 22, 2021, Plaintiff had a conversation with Defendants Associate Warden Torres and Sergeant Santoya in front of the Facility B1 Housing Unit as they were preparing to enter the building. At that time, Plaintiff asked Defendant Torres why the Facility Yard was continuously being closed down for COVID testing and Plaintiff informed Defendant Torres that he planned to file an "INMATE APPEAL" regarding the matter. At that time, Defendant Torres responded: "IF YOU DON'T STOP CAUSING TROUBLE I'M GOING TO WRITE YOU UP AND REMOVE YOU FROM THE MAC." Defendant Santoya then interjected and stated: "YEAH AND WE ARE GOING TO TRANSFER YOU OUT OF HERE FOR WRITING UP C/O BASLOR." Defendants Torres and Santoya investigated and granted an appeal Plaintiff had filed against C/O Baslor. (See Exhibit 4, Appeal Granted Against C/O Baslor.)

When Plaintiff arrived in the housing unit he obtained a new mask because the strap on his current mask had broken. Approximately two minutes later, C/O Logan asked Plaintiff to pull up his mask over his nose during a conversation, and Plaintiff immediately complied with his request.

On March 23, 2021, Plaintiff received a CDCR-115 disciplinary report from Defendant Santoya for Disobeying an Order pursuant to Title 15 § 3005(B). The disciplinary report was unlawfully classified as "serious" by Defendant Boozer in violation of Title 15 § 3313(a) and the

serious classification made Plaintiff eligible to be removed from the Council, which was the main objective.  Section 11.6 of the MAC Constitution and by/laws requires an adjudication of a serious CDCR-115 before the Warden can remove a MAC member.  Nowhere in the disciplinary report does Defendant Santoya allege that he gave Plaintiff an order to do anything, nor does he mention that Plaintiff complied with C/O Logan's request to pull the mask up.  (See Exhibit 5, Disciplinary Report Santoya.)

On April 19, Plaintiff was summonsed to a disciplinary hearing that was conducted by Senior Hearing Officer Defendant Welch.  At that time, Defendant Welch refused to call any of the housing unit officers who were present on the day in question.  He also refused to review the housing unit audio video camera system which would have exonerated Plaintiff and impeached Defendant Santoya's account of the day in question.  Plaintiff tried to explain to Defendant Welch that the disciplinary was issued in retaliation for his use of the inmate appeals process and that the disciplinary report was wrongfully classified as "serious" in violation of Title 15 § 3313(a) and the rules of progressive discipline pursuant to Title 15 § 3312.  After Plaintiff conveyed these facts, Defendant Welch stated: "I DON'T HAVE TO REDUCE ANYTHING BECAUSE YOU LIKE TO WRITE US UP AND SUE US ANYWAY."  Defendant Torres approved the findings on May 11, 2021.  (See Exhibit 6, Disciplinary Hearing Results.)

On April 26, 2021, Plaintiff contacted Defendant Torres and explained that the disciplinary report was wrongfully classified and retaliatory.  Defendant Torres failed to correct the violation and advised Plaintiff of his right to appeal.  (See Exhibit 7, Letter to Torres.)

On May 14, 2021, Defendant Warden Fisher disseminated a memorandum which mandates that all staff at VSP utilize progressive discipline when dealing with facial covering violations.  This memo is consistent with Title 15 §§ 3312(a)(1)–(3) which governs the rules of progressive discipline.  (See Exhibit 8, Warden Fisher's Memo.)

On June 23, 2021, Plaintiff contacted Defendant Fisher regarding the retaliation and the falsely classified disciplinary report.  This was the third time Plaintiff contacted Defendant Fisher about retaliation and the use of falsely classified disciplinary reports to remove MAC members.  Plaintiff was terminated again.

4

On January 18, 2018, Plaintiff had contacted Defendant Fisher regarding retaliation and falsely classified disciplinary reports.  On October 21, 2019, Plaintiff conveyed his concerns at a MAC meeting to Defendant Fisher about CDCR-115 disciplinary reports being classified as serious when the offense does not meet the criteria as outlined in the rules of progressive discipline.  After being placed on notice Defendant Fisher failed and/or refused to address and correct the retaliatory actions of his staff.

On October 6, 2021, Plaintiff exhausted the appeals to the third level.  (See Exhibit 9, Letter to Fisher, MAC Minutes, Exhausted Appeal, Fisher's Letter.)

As relief, Plaintiff seeks a declaratory judgment, expungement of the disciplinary report from Plaintiff's C-file, and compensatory and punitive damages.

Plaintiff argues that this case is not barred by *Heck v. Humphrey* because Plaintiff's good time credits have previously been restored.  Title 15 § 3329.5 states in pertinent part: "Good Conduct Credit shall be restored for a Division "D," "E," or "F" offense discovered by department staff on or after May 1, 2017, if an incarcerated person remains disciplinary-free for a period of 90 calendar days."  Plaintiff's good time credit was restored on June 21, 2021.

**III.    Discussion**

**A.    Supervisory Liability**

To the extent Plaintiff seeks to hold any defendant liable based solely upon their supervisory role, he may not do so.  Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior.  *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc).  "Under the latter theory, supervisory liability exists even without overt

1    personal participation in the offensive act if supervisory officials implement a policy so deficient

2    that the policy itself is a repudiation of constitutional rights and is the moving force of a

3    constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646

4    (9th Cir. 1989)) (internal quotation marks omitted).  Plaintiff has failed to allege direct

5    participation in the alleged violations by Defendant Warden Fisher.  He does not make a

6    sufficient showing of any personal participation, direction, or knowledge on this defendant's part

7    regarding any other prison officials' actions.  Plaintiff has not alleged factual support that this

8    defendant personally participated in the alleged deprivations.

9        Plaintiff also alleges that he contacted Defendant Fisher at least three times regarding the

10    unlawful use of the disciplinary and classification process to retaliate and terminate duly elected

11    members of the MAC, and that there was a regular and systematic failure to provide training and

12    supervision regarding the practice.  A "failure to train" theory can be the basis for a supervisor's

13    liability under § 1983 in only limited circumstances, such as where the failure amounts to

14    deliberate indifference.  *See City of Canton v. Harris*, 489 U.S. 378, 387–90 (1989).  To establish

15    a failure to train claim, a plaintiff must show that " 'in light of the duties assigned to specific

16    officers or employees, the need for more or different training [was] obvious, and the inadequacy

17    so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably

18    be said to have been deliberately indifferent to the need.' "  *Clement v. Gomez*, 298 F.3d 898, 905

19    (9th Cir. 2002) (quoting *Canton*, 489 U.S. at 390).

20        However, Plaintiff has not alleged facts demonstrating that Defendant Fisher was

21    deliberately indifferent to a need for more or different training.  Defendant Fisher responded to

22    Plaintiff's concerns by explaining in a letter why Plaintiff's disciplinary report was correctly

23    classified, (ECF No. 17, pp. 49–50), and explaining during a meeting with the MAC that

24    disciplinary reports are classified on a case-by-case basis by each Facility's Captain, (*id.* at 54).[2]

25    _____

[2] Due to highlighting and photocopying, the relevant portion of Exhibit 9 is difficult to decipher, but appears to state:

26    **ITEM 2:** The Council has received complaint that CDCR disciplinary reports are being classified
      as serious when the offense does not meet the criteria of Title 15, Section 3315.

27

28    ***Response:*** Warden Fisher stated that it is the responsibility of the Captains on each facility to
      classify disciplinary reports.  AW Chavez stated that he reviews all disciplinary reports after the

1    Associate Warden Chavez, who is not named as a defendant, also explained during the same

2    meeting that he reviews all disciplinary reports after the hearing to ensure the reports are

3    classified correctly.  (*Id.*)

4          In addition, Plaintiff has failed to "demonstrate that his deprivation resulted from an

5    official policy or custom established by a . . . policymaker possessed with final authority to

6    establish that policy."

7          **B.    Eleventh Amendment Immunity**

8          Plaintiff is attempting to sue defendants for monetary damages in their official and

9    individual capacities.  "Suits against state officials in their official capacity . . . should be treated

10   as suits against the State."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr.*,

11   599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official

12   capacities as a suit against the state of California).  An official capacity suit "represent[s] only

13   another way of pleading an action against an entity of which an officer is an agent."  *Kentucky v.*

14   *Graham*, 473 U.S. 159, 165 (1985) (citation omitted).  Such a suit "is not a suit against the

15   official personally, for the real party in interest is the entity."  *Id.* at 166 (emphasis in original).

16         "The Eleventh Amendment bars suits for money damages in federal court against a state,

17   its agencies, and state officials acting in their official capacities."  *Aholelei v. Dep't of Public*

18   *Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Indeed, the Eleventh Amendment prohibits federal

19   courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against

20   a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid

21   congressional override. . . ."  *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999).  "The

22   Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an

23   arm of the state,' its instrumentalities, or its agencies."  *See Fireman's Fund Ins. Co. v. City of*

24   *Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert.

25

26         hearing to ensure that the report has been classified correctly.  Warden Fisher added that
           disciplinary reports all have different criteria therefore they are classified on a case-by-case basis
27         taking into consideration the inmate's history.  Associate Warden Chavez advised he had not
           previously heard of this issue.

28   (ECF No. 17, p. 54.)

                                                    7

1    denied, 538 U.S. 961 (2003).  "The State of California has not waived its Eleventh Amendment

2    immunity with respect to claims brought under § 1983 in federal court. . . ."  *Dittman*, 191 F.3d at

3    1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v.*

4    *Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of

5    Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

6         Therefore, Plaintiff's claims for monetary damages against the named defendants in their

7    official capacities are barred by the Eleventh Amendment.

8         **C.    First Amendment – Retaliation**

9         Allegations of retaliation against a prisoner's First Amendment rights to speech or to

10   petition the government may support a section 1983 claim.  *Rizzo v. Dawson*, 778 F.2d 527, 532

11   (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v.*

12   *Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First

13   Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some

14   adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

15   such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

16   not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567–

17   68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658

18   at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

19        Adverse action taken against a prisoner "need not be an independent constitutional

20   violation.  The mere threat of harm can be an adverse action."  *Watison*, 668 F.3d at 1114

21   (internal citations omitted).  A causal connection between the adverse action and the protected

22   conduct can be alleged by an allegation of a chronology of events from which retaliation can be

23   inferred.  *Id.*  The filing of grievances and the pursuit of civil rights litigation against prison

24   officials are both protected activities.  *Rhodes*, 408 F.3d at 567–68.  The plaintiff must allege

25   either a chilling effect on future First Amendment activities, or that he suffered some other harm

26   that is "more than minimal."  *Watison*, 668 F.3d at 1114.  A plaintiff successfully pleads that the

27   action did not reasonably advance a legitimate correctional goal by alleging, in addition to a

28   retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were

8

1  "unnecessary to the maintenance of order in the institution." *Id.*

2  As currently pled, the second amended complaint states a cognizable claim for retaliation,

3  based on allegations that after Plaintiff stated he would file an appeal regarding the continuous

4  closing down of the Facility Yard for COVID testing, Defendants Torres and Santoya threatened

5  to write Plaintiff up and remove him from the MAC, and thereafter Plaintiff received a

6  disciplinary report that resulted in the loss of good time credits and day room privileges.

7  **D.    False Accusation or Misclassification of Disciplinary Report**

8  Plaintiff alleges that he received a disciplinary report for Disobeying an Order, and it was

9  incorrectly classified as "serious." Although not entirely clear, it appears Plaintiff is alleging that

10  his rights were violated due to the misclassification of the report, or that he was falsely accused of

11  more serious conduct than was alleged in the report.

12  Inmates do not have any due process right to be free from false disciplinary charges. *See*

13  *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (inmates have "no constitutionally

14  guaranteed immunity from being falsely or wrongly accused of conduct which may result in the

15  deprivation of a protected liberty interest," provided that they are "not . . . deprived of a protected

16  liberty interest without due process of law."); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir.

17  1989) ("Sprouse's claims based on the falsity of the charges and the impropriety of Babcock's

18  involvement in the grievance procedure, standing alone, do not state constitutional claims.").

19  Accordingly, Plaintiff's claim that any defendant wrote a false disciplinary charge or misclassified

20  a disciplinary charge fails to state a cognizable claim.

21  **E.    Fourteenth Amendment – Procedural Due Process**

22  The Due Process Clause protects prisoners from being deprived of liberty without due

23  process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action

24  for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty

25  interest for which the protection is sought. Liberty interests may arise from the Due Process

26  Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

27  "Prison disciplinary proceedings are not part of a criminal prosecution, and the full

28  panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418

1   U.S. 539, 556 (1974).  With respect to prison disciplinary proceedings, the minimum procedural

2   requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between

3   the time the prisoner receives written notice and the time of the hearing, so that the prisoner may

4   prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and

5   reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense,

6   when permitting him to do so would not be unduly hazardous to institutional safety or

7   correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the

8   issues presented are legally complex.  *Wolff*, 418 U.S. at 563-71.  In addition "[s]ome evidence"

9   must support the decision of the hearing officer.  *Superintendent v. Hill*, 472 U.S. 445, 455

10  (1985).  The standard is not particularly stringent and the relevant inquiry is whether "there is any

11  evidence in the record that could support the conclusion reached . . . ."  *Id.* at 455–56 (emphasis

12  added).

13          Plaintiff alleges that his due process rights were violated because Defendant Welch, the

14  Senior Hearing Officer, refused to call any housing unit officers to testify as witnesses, or to

15  review the housing unit audio video system during the disciplinary hearing.  Plaintiff does not

16  have a due process right to present audio or video recordings during a disciplinary hearing, and

17  due process does not require that Plaintiff's witnesses physically appear at a RVR hearing if the

18  witness's statement is presented or calling the witness would be unduly hazardous to institutional

19  safety or correctional goals.  Plaintiff therefore fails to state a cognizable claim for a violation of

20  his due process rights during the RVR hearing.

21          **F.**    ***Heck v. Humphrey***

22          It has long been established that state prisoners cannot challenge the fact or duration of

23  their confinement in a section 1983 action and their sole remedy lies in habeas corpus relief.

24  *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005).  Often referred to as the favorable termination rule

25  or the *Heck* bar, this exception to section 1983's otherwise broad scope applies whenever state

26  prisoners "seek to invalidate the duration of their confinement-either directly through an

27  injunction compelling speedier release or indirectly through a judicial determination that

28  necessarily implies the unlawfulness of the State's custody."  *Wilkinson*, 544 U.S. at 81; *Heck v.*

1    *Humphrey*, 512 U.S. 477, 482, 486–87 (1994); *Edwards v. Balisok*, 520 U.S. 641, 644 (1997).

2    Thus, "a state prisoner's [section] 1983 action is barred (absent prior invalidation)—no matter the

3    relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state

4    conduct leading to conviction or internal prison proceedings)—if success in that action would

5    necessarily demonstrate the invalidity of confinement or its duration."  *Id.* at 81–82.

6         The exhibits to the second amended complaint indicate that Plaintiff was found guilty of

7    the disciplinary report for disobeying an order, and subsequently lost 30 days of credits and 30

8    days of day room privileges.  (ECF No. 17, pp. 38–39.)  In addition, in the original complaint

9    Plaintiff alleged that a writ of habeas corpus was denied in Madera County Superior Court,[3] and

10   the second amended complaint again seeks expungement of the disciplinary report from

11   Plaintiff's C-file.

12        Despite being provided with the opportunity to do so, Plaintiff has not alleged that the

13   disciplinary action has been "reversed on direct appeal, expunged by executive order, declared

14   invalid by a state tribunal authorized to make such determination, or called into question by a

15   federal court's issuance of a writ of habeas corpus."  *See e.g.*, *Cox v. Clark*, 321 Fed. Appx. 673,

16   676 (9th Cir. 2009) (affirming dismissal of due process claim pursuant to *Balisok* to the extent

17   that plaintiff sought restoration of good-time credits and the reversal of a disciplinary decision);

18   *McCoy v. Spidle*, 2009 WL 1287872, *7–*8 (E.D. Cal. May 6, 2009) ("A challenge under section

19   1983, seeking only damages and declaratory relief for procedural due process violations is also

20   barred if the nature of the challenge would necessarily imply the invalidity of the deprivation of

21   good-time credits.").

22        However, Plaintiff alleges that the lost good time credits were previously restored on June

23   21, 2021, and therefore this case is not barred by *Heck v. Humphrey*.  (ECF No. 17, p. 7.)  Based

24   on these allegations, the Court finds, at the pleading stage, that Plaintiff may proceed on his

---

[3] While it is true that an amended complaint supersedes the original complaint, *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012), Plaintiff also may not omit relevant facts in an attempt to state a cognizable claim.  *See Azadpour v. Sun Microsys., Inc.*, No. 06–3272, 2007 WL 2141079, at *2 n. 2 (N.D. Cal. July 23, 2007) ("Where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as 'false and sham.'") (citations omitted).  The Court therefore takes judicial notice of the unsuccessful habeas action as alleged in the original complaint.  (ECF No. 1, p. 5.)

1    cognizable First Amendment claim.  However, this finding does not preclude the filing of a

2    dispositive motion regarding whether Plaintiff's claims, or Plaintiff's request for expungement of

3    the disciplinary report from his C-File, are barred by *Heck*.

4        **G.    Prison Regulations**

5        Plaintiff alleges that Defendant Boozer unlawfully classified the disciplinary report as

6    "serious" and Defendants Welch, Torres, and Fisher refused to reduce the classification in

7    violation of Title 15 § 3313(a) and Defendant Fisher's memorandum regarding progressive

8    discipline.

9        To the extent that Plaintiff attempts to bring any claims solely based on a defendant's

10    violation of prison rules and policies, he may not do so, as alleged violations of prison rules and

11    policies do not give rise to a cause of action under § 1983.  Section 1983 provides a cause of

12    action for the deprivation of federally protected rights.  "To the extent that the violation of a

13    law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by

14    the federal Constitution, [s]ection 1983 offers no redress."  *Sweaney v. Ada Cty., Idaho*, 119 F.3d

15    1385, 1391 (9th Cir. 1997) (quoting *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th

16    Cir. 1996)); *see Davis v. Kissinger*, No. CIV S–04–0878-GEB-DAD-P, 2009 WL 256574, *12 n.

17    4 (E.D. Cal. Feb. 3, 2009).  Nor is there any liability under § 1983 for violating prison policy.

18    *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d

19    427, 430 (8th Cir. 1997)).  Thus, the violation of any prison regulation, rule or policy does not

20    amount to a cognizable claim under federal law, nor does it amount to any independent cause of

21    action under section 1983.

22        **H.    Declaratory Relief**

23        To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary.  "A

24    declaratory judgment, like other forms of equitable relief, should be granted only as a matter of

25    judicial discretion, exercised in the public interest."  *Eccles v. Peoples Bank of Lakewood Village*,

26    333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful

27    purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and

28    afford relief from the uncertainty and controversy faced by the parties."  *United States v.*

1  *Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).  If this action reaches trial and the jury returns

2  a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional

3  rights were violated.  Accordingly, a declaration that any defendant violated Plaintiff's rights is

4  unnecessary.

5  **IV.    Order and Recommendations**

6        Based on the foregoing, the Court finds that Plaintiff's second amended complaint states

7  cognizable claims against Defendants Torres and Santoya for retaliation in violation of the First

8  Amendment.  However, Plaintiff's second amended complaint fails to state any other cognizable

9  claims against any other defendants.

10       Despite being provided with the relevant legal standards, Plaintiff has been unable to cure

11  the deficiencies in his complaint.  Further leave to amend is not warranted.  *Lopez v. Smith*, 203

12  F.3d 1122, 1130 (9th Cir. 2000).

13       Accordingly, IT IS HEREBY ORDERED that Plaintiff's request for case status, (ECF No.

14  19), is GRANTED.

15       Furthermore, IT IS HEREBY RECOMMENDED as follows:

16  1.  This action proceed on Plaintiff's second amended complaint, filed December 1, 2023,

17       (ECF No. 17), against Defendants Torres and Santoya for retaliation in violation of the

18       First Amendment; and

19  2.  All other claims and defendants be dismissed, with prejudice, based on Plaintiff's failure

20       to state claims upon which relief may be granted.

21                                    * * *

22       These Findings and Recommendations will be submitted to the United States District

23  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within

24  **fourteen (14) days** after being served with these Findings and Recommendations, the parties may

25  file written objections with the court.  The document should be captioned "Objections to

26  Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed**

27  **fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page**

28  **number if already in the record before the Court.  Any pages filed in excess of the 15-page**

13

**limit may not be considered.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **November 12, 2025**           /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE